IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MONTGOMERY INVESTMENTS, LLC,  )
*et al.*,                                                       )
                                                                     )
              Plaintiffs,                             )
v.                                                             )       CASE NO. 2:10-cv-408-MEF
                                                                     )
PAVIT COMPLEX, INC.                        )       (WO – DO NOT PUBLISH)
                                                                     )
              Defendant.                            )

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Plaintiffs' Montgomery Investments, LLC

("Montgomery Investments"), Behnam Shirian ("Shirian"), and Mehdi Tizabgar

("Tizabgar") (collectively "Plaintiffs") Motion for Summary Judgment, (Doc. # 34), filed

on October 29, 2010.  Plaintiffs ask this Court to issue a declaratory judgment under 28

U.S.C. § 2201(a) holding that Plaintiffs' have satisfied their obligations under a

Promissory Note given to Defendant Pavit Complex, Inc. ("Pavit Complex") and ordering

surrender of the Promissory Note.  Plaintiffs claim that they are due summary judgment

under Alabama Code § 7-3-311, relating to the law of accord and satisfaction by use of a

negotiable instrument.  In response, Pavit Complex contends that Plaintiffs have failed to

establish accord and satisfaction with respect to the Promissory Note.  After careful

consideration of the arguments of counsel, the relevant case law, and the record as a

whole, the Court finds that the Motion for Summary Judgment, (Doc. # 34), is due to be

DENIED.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332, based upon the parties' diversity of citizenship[1] and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.  The parties contest neither personal jurisdiction nor venue and the Court finds adequate grounds alleged to support both personal jurisdiction and venue.

## FACTS AND PROCEDURAL HISTORY

**I.  Facts**

Prior to July of 2008, Montgomery Investments was searching for investment properties in the South—including Alabama, Georgia, and Florida—through its agent, Shirian.  (Doc. # 39, at 1) (citing Ex. 39-1, Shirian Dep. at 8:13–20)).  Via an internet site, Shirian met Dr. Harsimran Sabharwal ("Sabharwal"),[2] (Ex. 39-1 at 8:1–11), who is the President of Pavit Complex and the "sole actor of [that company] as it relates to this transaction." (Ex. 39-2, Sabharwal Aff. at 1).  Prior to July of 2008, Pavit Complex "owned real property located in Montgomery, Alabama, more commonly known as the Normandale Shopping Plaza (the "Normandale Mall")."  *Id.*  After negotiations, Montgomery Investments entered into a seller-financed purchase agreement of the

---

[1]  Plaintiff Montgomery Investments is a limited liability company formed and existing under the laws of Alabama.  Plaintiffs Shirian and Tizabgar are individuals domiciled in California.  Defendant Pavit Complex is a New York corporation with its principal place of business in New York.  (Doc. # 4, Am. Compl ¶¶ 1–3).

[2]  The parties agree that Sabharwal is also known as "Dr. Saab."

2

Normandale Mall with Pavit Complex.  (Doc. # 34, at 1) (citing Ex. 34-1, Shirian Aff. ¶ 5); *see also* Doc. # 39, at 2.  The sale closed on July 31, 2008, (Ex. 34-1, Shirian Aff. ¶ 5), with a total purchase price of $1,750,000.00.  (Doc. # 39, at ) (citing Ex. 39-2, Sabharwal Aff. at 1).  Montgomery Investments paid $450,000.00 to Pavit Complex and executed a Mortgage and Promissory Note in favor of Pavit Complex as to the remaining amount of $1,300,000.00.  *Id.*; *see also* Exs. 39-3, 4 (the Mortgage and Promissory Note, respectively).  Shirian, Tizabgar, and Joseph Arnone ("Arnone") further executed a Guaranty Agreement to Pavit, under which each jointly and severally guaranteed full payment of the Promissory Note.  (Ex. 39-5).  After this point, the parties appear to disagree as to almost all of the remaining events.

### A.  Plaintiffs' Alleged Facts

Plaintiffs claim that they "negotiated two modification agreements related to the repayment of terms of the debt represented by the Promissory Note."  (Doc. # 34, at 1 (citing Ex. 34-1, Shirian Aff. ¶ 5)); *see also id.* at 2 ("The parties had negotiated modification agreements to the payment of terms of the loan to [Pavit Complex] in January and June of 2009.").  According to Plaintiffs, the first modification occurred on January 21, 2009 and adjusted the balance owed on the Promissory Note to $1,050,000.  *Id.* at 7 (citing Ex. 34-4).  Plaintiffs allege that Pavit Complex "acknowledged the [January 21, 2009 modification] agreement by assenting to the written memorand[um]" found in Exhibit 4.  *Id.* at 2 (citing Ex. 34-1, Shirian Aff. ¶ 5 ("Sabharwal refused to sign

3

[this] document[] at my urging, but assured . . . Arnone and me that he would honor the agreement[] represented thereby upon payment by their terms.")).  The January 21, 2009 memorandum provides the following:

Proposed Terms of Settlement Agreement
January 21, 2009
Normandale Shopping Center

1. Mortgage balance will be reduced to $1,050,000 to be paid as followed:
   a. $50,000 on Jan 30, 2009
   b. $50,000 on Feb 10, 2009
   c. $50,000 on Feb 20, 2009
   d. $50,000 on March 1, 2009
   e. $850,000 on or before May 16, 2009
   f. Loan must not be in default and payments must be current, i.e., monthly payments of $9692.00 [sic] will be paid January, February, March, April, & May 2009.

2. This document is intended as a general outline and shall not be considered binding upon any parties.  It is not intended to be an agreement.

(Ex. 34-4).  Neither party signed this document.

Under this agreement, Plaintiffs contend that "[t]en post-dated checks were issued to Pavit Complex on January 21, 2009."  (Ex. 34-1, Shirian Aff. ¶ 7); *see also* Ex. 34-12 (showing (1) four checks from Montgomery Investments to Pavit Complex in the amount of $50,000 dated January 30, 3009 (check # 1342), February 10, 2009 (check # 1433), February 20, 2009 (check # 1431), and March 1, 2009 (check # 1430); one check in the amount of $850,000 dated May 16, 2009 (check # 1434); and five checks in the amount of $9,692 dated January 1, 2009 (check # 1425), February 1, 2009 (check # 1426), March 1, 2009 (check # 1427), April 1, 2009 (check # 1428), and May 1, 2009 (check # 1429)).

4

Plaintiffs claim that Pavit Complex also acknowledged the January 21, 2009 modification by "labeling the last check [check # 1434 in the amount of $850,000] under [this] modification as 'PRINCIPAL BALANCE.'" *Id.* (citing Ex. 34-12, at 3); *see also id.* at 6 ("Under the January 21, 2009 modification, Montgomery Investments issued a series of post-dated checks to cover payment obligations.  The last of these number 1434 in the amount of $850,000, was labled [sic.] 'PRINCIPAL BALANCE' by . . . Sabharwal.") (citing Ex. 34-1, Shirian Aff. ¶ 7–8; Ex. 34-12).

However, before this final check matured on May 16, 2009, Shirian claims he "approached . . . Sabharwal about arranging for payment of the final $850,000 [covered by this last check] over the next twelve (12) months." (Ex. 34-1, Shirian Aff. ¶ 7).  Thus, Shirian states that he met Sabharwal at his office on June, 2, 2009 resulting in the second alleged modification.  *Id.*  This second alleged modification occurred that same day—June 2, 2009—and again "adjusted" the balance owed to $850,000.  (Doc. # 34, at 7) (citing Ex. 34-5).  The January 2, 2009 memorandum provides the following:

<u>**Revised**</u> Proposed Terms of Settlement Agreement
June 2, 2009
Normandale Shopping Center

In exchange for discounted payoff, payments will be made as follows:

1) Delinquent payments for April 2009 and May 2009 paid immediately.

(2) Monthly discounted interest payments of $6,900 per month for a maximum of 13 months starting June 2009

(3) Monthly payments towards principal

5

| | |
|---|---|
| July 1, 2009: | $100,000 |
| August 1, 2009: | $100,000 |
| September 1, 2009: | $100,000 |
| October 1, 2009: | $100,000 |
| November 1, 2009: | $100,000 |
| December 1, 2009: | $50,000 |
| January 1, 2010: | $50,000 |
| February 1, 2010: | $50,000 |
| March 1, 2010: | $50,000 |
| April 1, 2010: | $50,000 |
| May 1, 2010: | $50,000 |
| June 1, 2010: | $50,000 |
| TOTAL | $850,000 |

4) In case the above principal or interest payments are not made timely, the terms of the original mortgage will apply and the payments actually made will be applied by Lender accordingly.

5) This document is intended as a general outline and shall not be considered binding upon any parties.  It is not intended to be an agreement.

(Ex. 34-5) (emphasis in original).  Neither party signed this document.

Again, Plaintiffs claim that Pavit Complex "acknowledged the agreement by assenting to the written memorand[um]" found in Exhibit 5.  (Doc. # 34, at 2) (citing Ex. 34-1, Shirian Aff. ¶ 5 ("Sabharwal refused to sign [this] document[] at my urging, but assured Joseph Arnone and me that he would honor the agreement[] represented thereby upon payment by their terms.")).  They also claim that, on February 4, 2010, Shirian emailed Sabharwal, asking him to provide a Form 1098 mortgage interest statement according to the terms of the June 2, 2009 agreement.  *Id.* at 6–7 (citing Ex. 34-1, Shirian Aff. ¶ 6; Ex. 34-11, Alleged Email dated February 4, 2010).  Plaintiffs contend that Pavit Complex "provide[d] such a form," *id.* at 7 (citing Ex. 34-16, 1098 Form), and that

6

"comparison of the . . . email and the . . . mortgage interest statement shows close agreement." *Id.* Thus, Plaintiffs contend that Pavit Complex also "acknowledged the [June 2, 2009 modification] agreement by . . . preparing a Form 1098 mortgage interest statement according to" the terms of that agreement. *Id.* at 2.

Plaintiffs contend that under the second revised agreement, "Montgomery Investments was paying Pavit Complex a flat $6,900.00 amount as interest for each month that there was any amount still owing on the Promissory Note." (Ex. 34-1, Shirian Aff. ¶ 8). In March of 2010, Plaintiffs claim that "Montgomery investments . . . delivered three $50,000 checks and three $6900 checks that were to mature for payment in the three coming months: April, May and June 2010." (Doc. # 34, at 5); *see also* Ex. 34-1, Shirian Aff. ¶ 8 ("I delivered to Pavit Complex, three (3) post-dated checks, numbered 1189, 1190, and 1191 that matured in April, May and June, 2010. These checks were also accompanied by three (3) interest checks in the amount of $6,900.00."). According to Plaintiffs, they offered "payment-in-full cashier's checks" to replace the checks numbered 1189, 1190, 1191. *Id.* at 7; *see also* Ex. 34-1, Shirian Aff. ¶ 8 ("Later that month, we secured the final $150,000 [covered by checks 1189, 1190, and 1191] in lump sum to pay off the Promissory Note. I sent three (3) $50,000 cashier's checks . . . upon their purchase on March 18, 2010."); Ex. 34-13 (containing photocopies of three Bank of America cashier's checks in the amount of $50,000 and dated March 18, 2010). Shirian claims that he also "request[ed] that Pavit Complex return the three (3) $6,900.00 interest

7

checks." (Ex. 34-1, Shirian Aff. ¶ 8).  Plaintiffs point to an email exchange between

Shirian and Sabharwal dated March 15, 2010 containing, *inter alia*, the following:

> we have been able to recieved new source in order to cover the last 3 $50,000
> checks dated April 1 10 may,,1,,10 and June 1 2010 Kansas city investments
> check numbers #1189,,#1190,,#1191 in total $150,000 and you should receive
> via express no later than Friday march 19Th,, there will be 3 cashier checks for
> each checks holding to replace the above numbers,,and will be mail to your
> physical address,,and as you stated please return the 3 check numbers
> #1197,,#1198,,#1199 in the amount of $6900 back to me.
>                                   . . .
> upon received,please release a recorded mortgage and satisfaction of the
> promissory note..

(Ex. 34-8) (errors found in the original).   Sabharwal responded, "I will do as requested."

*Id.*

After Sabharwal refused to accept the cashier's checks, Plaintiffs claim that they

tendered three payment-in-full checks numbered 1171, 1172, and 1173.  (Doc. # 34, at 5,

7); *see also* Ex. 34-1, Shirian Aff. ¶ 8 ("Sabharwal refused to accept the cashier's checks,

and he returned those checks.  On March 22, 2010, I sent three (3) $50,000.00 payment-

in-full checks drawn on the account of Kansas City Investments.").  Each of these checks

replaced one of the previously issued checks numbered 1189, 1190, and 1191 and were

"marked 'pd in full' with an indication of the post-dated check that they replaced."  (Doc.

# 34, at 5); *see also* Ex. 34-14 (showing each of the March 20, 2010 checks as they were

allegedly tendered to Pavit Complex with "pd in full 1189", "paid in full 1190", and "paid

in full 1191", in the bottom left corner, respectively).  Plaintiffs claim that a "cover letter

sent with the payment-in-full checks . . . clearly stated that the checks were offered in full

satisfaction of the debt."  (Doc. # 34, at 5) (citing Ex. 34-9).  This alleged cover letter

from Shirian to Sabharwal, which is dated March 22, 2010, states as follows:

> please find enclosed 3 checks ;;; dated march 20 2010
> #1171    amount $50,000    to replace # 1189
> #1172    amount $50,000    to replace # 1190
> #1173    amount $50,000    to replace 1191
> you can deposit all 3 checks as soon as possible
> and upon doing so,note ,,paid in full,, return the 3 $6900 checks as agreed on
> the email dated march 15 2010 ,,
> and return the cashier checks total $150,000 and the satisfaction of the
> promissory note in the amount of $1,300,00 for the normandle shopping
> center,,and the recorded paid deed [sic].

(Ex. 34-9) (errors found in the original).  Plaintiffs further contend that, in response to

this cover letter,  Sabharwal sent Shirian a fax stating "that the promissory note and

release of mortgage will be sent once the checks are deposited."  (Doc. # 34, at 5) (citing

Ex. 34-10 (containing a fax allegedly sent from Sabharwal on March 23, 2010 stating

"Upon cashing the 3 checks #1189,#1190,#1191 the promissory note, etc. will be send")

(errors found in the original)).

Pavit Complex deposited the checks numbered 1171, 1172, and 1173 on March 23,

2010. *Id.* at 5 (citing Ex. 34-7 (consisting of Pavit Complex's Transaction Listing

through July 31, 2008 and June 1, 2010, which shows the 1171, 1172, and 1173 checks

were deposited on March 23, 2010)).   However, Plaintiffs claim that Pavit Complex

"struck through the 'pd in full' memos on the checks."  *Id.* at 2 (citing Ex. 34-14

(showing the checks as allegedly tendered to Pavit Complex with "paid in full" written in

the bottom left-hand corner); Ex. 34-15 (showing images of the checks they were

deposited for payment with the "paid in full" statements blacked out)).  Plaintiffs also

contend that Pavit Complex "never re-tendered those funds to Montgomery Investments."

*Id.* at 2.  However, Pavit Complex allegedly "returned the final three $6900 interest

checks upon payment of the final $150,000 three months ahead of expectation."  *Id.* at 7

(citing Ex. 34-1, Shirian Aff. ¶ 8).  Despite this alleged payment of the final balance

owing under the Promissory Note, Plaintiffs claim that Pavit Complex "refused to return

the note despite the modification agreement and the assurances made by [its] agent" and

instead "proposed to hold the Promissory Note, pending an agreement for Montgomery

Investments to purchase another property on the back side of the Normandale Mall."  *Id.*

at 1 (citing Ex. 34-1, Shirian Aff. ¶ 9).  Finally, Plaintiffs claim that Pavit Complex

"never declared a default in Montgomery Investment's payment under the Promissory

Note, as modified by the Parties."  *Id.* at 5 (citing Ex. 34-1, Shirian Aff. ¶ 5); *see also id.*

at 2 ("[Pavit Complex] never declared the [Promissory] Note to be in default.").

### B.  Pavit Complex's Alleged Facts

Pavit Complex initially contends that "[t]here was never any modification

negotiated or agreed to by the parties to this debt."  (Doc. # 39, at 2) (citing Ex. 39-6,

Sabharwal Dep. at 17, 19, 69–70).  Pavit Complex acknowledges that Shirian proposed

the January 21, 2009 modification "to discount the payoff with principal reductions made

by Montgomery Investments to Pavit [Complex]", but claims that it "never agreed to the

Proposal Terms of Settlement Agreement."  *Id.* at 3 (citing Ex. 39-6, Sabharwal Dep. at

10

19, 29–31).  Emphasizing that the Proposal of Terms of Settlement Agreement "is not signed by any party," Pavit Complex points out that "there are no signed documents of an agreement to modify the Mortgage and/or Promissory Note."  *Id.* (citing Ex. 39-1, Shirian Dep. at 63; Ex. 39-7, Proposal of Terms of Settlement Agreement).  Furthermore, Pavit Complexes stresses that "[t]he original Promissory Note expressly stated in paragraph 11(d) that no modification of the agreement is valid unless it is in writing and signed by all parties."  *Id.* at 8 (citing Ex. 39-4, the Promissory Note).

With regards to the March 15, 2010 email exchange between Sabharwal and Shirian, Pavit complex, Pavit Complex admits that the exchange occurred.  *Id.* at 11. However, Pavit Complex points out that Shirian's email "contained eleven paragraphs with a mixture of business, personal discussion and religious discussion," and that it wasn't until the second-to-last paragraph that it contained "one brief statement . . . stating that 'upon receiving, please release the recorded mortgage and satisfaction of the promissory note.'"  *Id.*; *see also* Ex. 39-12 (containing the email exchange between Sabharwal and Shirian dated March 15, 2010) (errors found in the original).  Thus, Pavit Complex claims that when Sabharwal replied that he would "do as requested," he meant "to return checks 1197, 1198, and 1199."  (Doc. # 39, at 11) (citing Ex. 39-2, Sabharwal Aff. at 3–4).  Sabharwal contends that his "e-mail was in no way an agreement to release . . . Plaintiffs from their duties under the Promissory Note."  (Ex. 39-2, Sabharwal Aff. at 4).  Indeed, he claims that he "does not recall the email containing the one sentence

paragraph located in the second-to-last paragraph of the lengthy email." *Id.* at 11–12

(citing Ex. 39-6, Sabharwal Dep. at 51).

Rather than an accord and satisfaction, Pavit Complex argues that this case

consists of "a scheme to fraudulently claim accord an satisfaction . . . by way of an

unexecuted Proposal Terms of Settlement Agreement along with checks issued with a

statement 'paid in full 1189,' 'paid in full 1190,' and 'paid in full 1191' and an alleged

accompanying cover letter and fax." *Id.* at 4–5.  Pavit Complex emphasizes that the post-

dated checks numbered 1189, 1190, and 1191 "contained no provision stating only paid in

full." *Id.* at 5–6 (citing Ex. 39-8 (containing checks numbered 1189, 1190, and 1191)).

Furthermore, Pavit Complex points out that these checks were "written on Kansas City

Investments account, a third party to this action" and that they were returned "because

there were insufficient funds to satisfy the amount stated on the check." *Id.* at 6.  When

Plaintiffs substituted these post-dated checks with the cashier's checks, the cashier's

checks were returned and not cashed because they stated "paid in full" on the memo line

and Sabharwal "did not consider the debt to be paid in full." *Id.* (citing Ex. 39-9

(containing photocopies of the cashier's checks); Ex. 39-2, Dr. Sabb. Aff. at 3 (noting his

"refusal to deposit and return[ing] to the Plaintiffs the three cashier's checks because

they were noted 'PAID IN FULL'")).

Thus, Pavit Complex contends that the checks numbered 1171, 1172, and

1173—with the "paid in full" references to the three prior checks numbered 1189, 1190,

and 1191—"make no mention of payment in full as to the entire debt owed" by Plaintiffs
to Pavit Complex.  *Id.*  Pavit Complex claims that it refused the three new checks as well
and only cashed them after Shirian—not Sabharwal—had blocked out the "paid in full"
language and returned them, allegedly "indicating that the Plaintiffs did not have the
requisite intent to pay the full debt owed."  *Id.*; *see also* Ex. 39-2, Sabharwal Aff. at 3 ("I
refused and sent those checks back and . . . Shirian blocked out the legends and returned
them to me to deposit.").[3]  Thus, Pavit Complex contends that the checks numbered 1171,
1172, and 1173 "could only represent payment of the money owed to [it] under checks
[numbered] 1189, 1190, and 1191."  *Id.*; *see also id.* at 10 ("Pavit does not disagree that
[the checks numbered] 1171, 1172 and 1173 paid 1189, 1190 and 1191 in full, but *only* to
those conditions . . .; however, it did not pay of[f] the [Promissory] Note in full."); *id.* at
15 ("Pavit did accept these checks as payment for the other three prior bad checks.").  As
for the March 22, 2010 cover letter allegedly accompanying the 1171, 1172, and 1173
checks, Pavit Complex claims it "never received such a letter."  *Id.* at 11 (citing Ex. 39-2,
Sabharwal Aff. at 3).

With respect to the March 23, 2010 fax allegedly sent from Sabharwal stating that
the Promissory Note will be sent, Pavit Complex argues that Sabharwal "has testified that
he never saw or authorized a fax like that suggesting that the Promissory Note would be

---

[3]  In their reply, Plaintiffs point out that in Sabharwal's deposition, he testified that "he did
not know who had struck-through the payment-in-full legends on the checks."  (Doc. # 41, at 5)
(citing Ex. 41-5, Sabharwal Dep. at 62:2–8).

sent to Montgomery Investments upon cashing of the checks." *Id.* at 12 (citing Ex. 39-2, Sabharwal Aff. at 4 ("[T]he fax that . . . Plaintiffs rely upon is not a fax that I sent or authorized to be sent.  It is in fact a forged fax coversheet.")).  Pavit Complex points out that the exhibit relied upon by Plaintiffs showing Sabharwal's alleged fax also contains a fax sent on the same day by Karen Sellick ("Sellick"), Sabharwal's secretary.  *Id.* at 12. Pavit contends that latter was actually sent by Sellick, but the former—the fax attributed to Sabharwal—is a forgery.  *Id.* at 12–13.  Pavit emphasizes alleged "distinct differences" between the two faxes which it contends demonstrates the forgery, namely:

- On [Sabharwal's alleged fax] the number one is typed 1 where as on [Sellick's fax] the number is typed as 1.  This difference indicates that the font used in [Sabharwal's alleged fax] is not the same as the font used in [Sellick's fax].

- On [Sabharwal's alleged fax] the word 'CHECKS' does not line up with 'Regarding'.  If this coversheet had indeed been produced by Pavit's computer the words and spacing would be correct as per [Sellick's Fax] the wording 'USPS Package' is spaced and lined up perfectly with 'Regarding'.

- On [Sabharwal's alleged fax] the words 'Dr.Saab' do not have a space between them, the agent for Pavit would not type like this and, if they had made an error, the spell check would indicate so.

- On [Sabharwal's alleged fax] the 'to' and 'from' in the top right corner of the letterhead is left blank while on [Sellick's Fax] the 'to' and 'from' clearly identifies the person the fax is addressed to and the person that sent the fax.

- On [Sabharwal's alleged fax] the letter 'j' is typed as J but on [Sellick's Fax] the letter 'j' is typed as J.  Again, this difference is indicative of different fonts being used.

14

- Lastly [Sabharwal's alleged fax] has the addressee under the 'Comments' section of the fax off-set or indented and [Sellick's Fax] shows no such off-set or indentation.

*Id.* at 12–13 (citing Ex. 39-15, Sellick Aff. at 3–4).

Additionally, Pavit Complex contends that all faxes are sent by Sellick with her electronic signature, but that she has never seen the fax allegedly sent by Sabharwal. *Id.* at 13 (citing Ex. 39-6, Sabharwal Dep. at 66–67; Ex. 39-15 Sellick Aff. at 2–3). Finally, as further support for its contentions that it never sent Sabharwal's alleged March fax, Pavit Complex notes that "[b]oth the forged fax and the alleged cover letter has the number one typed as 1 rather than as 1 as typed in correspondence from Sabharwal's secretary." *Id.* at 14 (citing Ex. 39-11 (the alleged cover letter); Ex. 39-13 (Sabharwal's alleged fax)). Thus, Pavit Complex contends that it is "apparent who the author and creator of the forged fax is." *Id.* at 13.[4]

Finally, Pavit Complex contends that "[t]he undisputed evidence is that Montgomery Investments was perpetually late making their monthly payments under the terms of the Promissory Note." *Id.* at 3 (citing Ex. 39-1, Shirian Dep. at 41–50). Thus, Pavit Complex claims that it did indeed declare the Promissory Note to be in default, and that it was only after this declaration of default that the Plaintiffs filed the present lawsuit.

---

[4] In Plaintiff's Reply on Their Motion for Summary Judgment, (Doc. # 41), filed on December 2, 2010, Plaintiffs contend that they are entitled to summary judgment even if the disputed cover letter and fax are discounted.

*Id.*[5]

## II.  Procedural History

On May 11, 2010, Plaintiffs filed suit against Pavit Complex and amended their

Complaint on May 12, 2010.  (Docs. # 1, 4).  The Amended Complaint contains three

counts pleaded in the alternative: (1) declaratory relief based on subsequent agreement

(Count 1); (2) declaratory relief based on equitable estoppel (Count 2); and (3)

declaratory relief based on accord and satisfaction (Count 3).  (Doc. # 4, at 2–3).  On

October 29, 2010, Plaintiffs filed the instant motion seeking summary judgment on Count

3—namely a declaratory judgment based on accord and satisfaction under Alabama Code

§ 7-3-311.  (Doc. # 34).  Defendant's Response and Brief in Opposition to Montgomery

Investment's Motion for Summary Judgment, (Doc. # 39), was filed on November 24,

2010.  Plaintiffs' Reply on Their Motion for Summary Judgment, (Doc. # 41) was filed

on December 2, 2010, and the motion came under submission that same day.

### SUMMARY JUDGMENT STANDARD

---

[5]  Pavit Complex's Transaction Listing dated May 27, 2010 has an entry for September 11, 2008 which reads "Loan in Default. Accelerated at Default Rate (30%)."  (Ex. 34-7).  However, in response to discovery requests, Pavit Complex admitted that the entry was added "when [its representatives] found out that [Montgomery Investment] was not going to pay us, being around the middle of May 2010" and that "this was added to try to make sure we were fully compensated under the terms of the original agreement."  (Doc. # 41, at 2) (citing Ex. 41-3, Pavit Complex Inc.'s Responses to Plaintiffs' Written Discovery Requests); *see also* Ex. 41-3 ("REQUEST FOR ADMISSION 3: Admit you declared the interest rate on the promissory note increase after this lawsuit was filed.  RESPONSE: Admitted."); Ex. 41-1, Tindal Aff. at 1 (stating that Pavit Complex never produced any documents in response to "REQUEST FOR PRODUCTION 10: "Produce any notice of default that was sent to Montgomery Investments and/or any of the guarantors of the Promissory Note.").

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[6] *Celotex*. 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–23; *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993) ("For issues, however, on which the non-movant would bear the burden of proof at trial, . . . '[t]he moving party may simply show[]—that is, point[] out to the district court—that there is an absence of evidence to support the non-moving party's case.'") (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th

---

[6] "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" *Lewis*, 908 F. Supp. at 943–44. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case." *Id.* at 944 (citing *Anderson*, 477 U.S. at 248).

Cir. 1991)).

Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## ANALYSIS

### I.  Choice of Law

When determining substantive choice-of-law issues for diversity suits such this action, this Court must look to the law of the State of Alabama.  *Trumpet Vine Invs., N.V. v. Union Capitol Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) ("A federal district court sitting in diversity must apply the choice of law rules of the forum state.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In the signed Promissory Note, the parties agreed that Alabama law would determine the "rights and obligations of the parties" with respect to the Promissory Note.  (Exs. 34-2, 39-4 ¶ 12). Because "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement," *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991), and because neither party disputes the application of Alabama law, this Court finds that Alabama law governs the dispute in the instant action.

### II.  Accord and Satisfaction under Alabama Law

Plaintiffs claim that the parties effected an accord and satisfaction through Plaintiffs' tender and Pavit Complex's acceptance of the three checks dated March 20, 2010 and numbered 1171, 1172, 1173.  As the Alabama Supreme Court has stated, "an accord and satisfaction is an agreement reached between competent parties regarding payment of a debt the amount of which is in dispute."  *Ex parte Meztista*, 845 So. 2d 795, 797 (Ala. 2001) (citing *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith*, 732 F.2d

859, 861 (11th Cir. 1984); *O'Neal v. O'Neal*, 284 Ala. 661, 663 (Ala. 1969)).  In order for

an accord and satisfaction to exist, there must be the "intentional relinquishment of a

known right."  *Id.* (citing *O'Neal*, 284 Ala. at 663).  Thus, an accord and satisfaction

depends upon an express or implied contract, and the elements required to establish a

contract for an accord and satisfaction are the same as those for valid contracts

generally—namely, "(1) a proper subject-matter, (2) competent parties, (3) an assent or

meeting of the minds of the parties, and (4) a consideration."  *Waide v. Tractor & Equip.*

*Co.*, 545 So. 2d 1327, 1328 (Ala. 1989) (citing *Ray v. Ala. Cent. Credit Union*, 472 So. 2d

1012, 1014 (Ala. 1985)).

Alabama Code § 7-3-311 "prescribes the rules that apply when an accord and

satisfaction is asserted on the basis of a written notation on a negotiable instrument, or a

written communication accompanying a negotiable instrument."  Alabama Comment to

Ala. Code § 7-3-311.  In pertinent part, § 7-3-311 of the Alabama Code provides:

> (a) If a person against whom a claim is asserted proves (i) that person in good
> faith tendered an instrument to the claimant as full satisfaction of the claim, (ii)
> the amount of the claim was unliquidated or subject to bona fide dispute, and
> (iii) the claimant obtained payment of the instrument, the following
> subsections apply.
>
> (b) . . . [T]he claim is discharged if the person against whom the claim is
> asserted proves that the instrument or an accompanying written communication
> contained a conspicuous statement to the effect that the instrument was
> tendered as full satisfaction of the claim.

Ala. Code § 7-3-311(a)–(b).  Plaintiffs contend that they meet the requirements of § 7-

311(a) and (b); however, Pavit Complex contends that Plaintiffs cannot demonstrate that

the instruments were tendered in "good faith" as full satisfaction of the claim or that the amount of the claim was unliquidated or subject to a bona fide dispute.  Because this Court finds a genuine dispute of material fact as to the former requirement for accord and satisfaction, the motion is due to be DENIED.

As previously stated, a person seeking an accord and satisfaction must "in good faith tender[] an instrument to the claimant as full satisfaction of the claim."  § 7-3-311. This necessarily entails two components: (1) the person must tender an instrument as full satisfaction of the claim, and (2) that act must be done in good faith.  Here, there are genuine disputes of material fact as to both requirements such that summary judgment would be inappropriate.

**A.  Tendering an Instrument as Full Satisfaction of the Claim**

With regards to whether Plaintiffs tendered the checks numbered 1171, 1172, and 1173 as full satisfaction of the claim, Plaintiffs argue these checks were "tendered in full satisfaction of the debt because, as they were . . . immediately payable."  (Doc. # 41, at 4) (citing Ex. 34-14 (photocopies of the checks all of which were payable as of March 20, 2010)).  Relying on Shirian's affidavit, they have also produced evidence that these checks were "sent to Pavit Complex with payment-in-full legends on March 22, 2010." *Id.* (citing Ex. 34-1, Shirian Aff. ¶ 8); *see also* Ex. 34-14 (photocopies of the 1171, 1172, and 1173 checks stating "paid in full 1189", "paid in full 1190", and "paid in full 1191", respectively, in the memo line)).  They also point to the March 15, 2010 email exchange

between Shirian and Sabharwal in which Shirian wrote a lengthy email containing a request for the return of the three $6,900 interest checks and "release of the recorded mortgage and satisfaction of the [P]romissory [N]ote."  (Doc. # 41, at 3) (citing Ex. 34-8). In sum, they claim that they sent the 1171, 1172, and 1173 checks "with the subjective intent to satisfy the entire debt" and that Sabharwal understood this based on his depositing of the checks and his return of three $6,900 interest checks for the months of April, May, and June 2010.  *Id.*, at 4.  Based on such evidence, a reasonable factfinder could find that the checks were indeed tendered as full satisfaction of the claim.

However, that is not the totality of the evidence before this Court.  Sabharwal has testified that he rejected the three cashier's checks because they stated "PAID IN FULL" on the memo line and he did not consider the debt to be paid in full.[7]  (Doc. # 39, at 6). This evidence supports Sabharwal's testimony from his affidavit in which he states that he also rejected the 1171, 1172, and 1173 checks because they too contained the paid-in-full language.  (Ex. 39-2, Sabharwal Aff. at 3).  The affidavit also reveals that Sabharwal claims to have sent the checks back to Shirian, who struck through the paid-in-full language and sent them back to Sabharwal.  *Id.*  Plaintiffs contend that such a course of events is precluded by the timing of events in this case.  (Doc. # 41, at 5).  The parties appear to agree that the checks were deposited on March 23, 2010.  Because Plaintiffs

_____

[7]  Plaintiffs have not disputed Sabharwal's reason for returning the cashier's checks nor offered evidence as to any different reason why three seemingly valid cashier's checks would be returned.

22

allege that they initially sent the checks to Sabharwal on March 22, 2010, they claim that it "would be impossible for parties dealing long-distance to exchange the checks twice in the course of a single day using ordinary commercial delivery services."  *Id.* (citing Ex. 34-1, Shirian Aff. ¶¶ 4–5 (stating that Shirian lives and works in California and Sabharwal lives and works in New York or New Jersey)).  They also contend that Pavit Complex has "produced no evidence to controvert this."

On the contrary, Pavit Complex has produced just such evidence—namely, Sabharwal's affidavit testimony that he had enough time after receiving the checks to return them and then receive them again.  Plaintiffs apparently ask this Court to discount Sabharwal's affidavit testimony on this point because, in his previously taken deposition, he testified that "he did not know who had struck-through the payment-in-full legends." (Doc. # 41, at 5).  The Eleventh Circuit has explained that "an affidavit can be disregarded when it constitutes a sham" and clarified as follows:

> A definite distinction must be made between *discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence*.  'An opposing party's affidavit should be considered although it differs from or varies (from) his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.'  6 Moore's Federal Practice para. 56.15 (4) (2d Ed. 1985) (footnote omitted).

> The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended.  To allow every failure of memory or variation in the witness's testimony to be disregarded as a sham would require too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case the affiant) was stating the truth.  Variations

23

in a witness's testimony and any failure of memory throughout the course of
discovery create an issue of credibility as to which part of the testimony
should be given the greatest weight if credited at all. *Issues concerning
credibility of witnesses and weight of the evidence are questions of fact
which requires resolution by the trier of fact.*

*Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986) (emphasis added).

Here, there is no obvious or transparent sham, but rather variations in testimony
which go to the credibility of the witness. In his deposition, Sabharwal stated that he did
not know who struck through the paid-in-full language on the 1171, 1172, and 1173
checks. That very well may have been true at the time the deposition was taken.
However, based on his affidavit, a factfinder could weigh the evidence and determine
that, since the time the deposition was taken, Sabharwal has remembered that he returned
the checks to Shirian who then struck the paid-in-full language. Such a finding would be
supported by his testimony that he returned the seemingly valid cashier's checks because
they contained the paid-in-full language.

A reasonable factfinder could believe Sabharwal's testimony that he returned the
checks and received them again with the paid-in-full language blocked out—*i.e.*, that the
checks were tendered a second time *not* as full satisfaction of the claim.[8] Again, although
this affidavit testimony allegedly contradicts Sabharwal's deposition testimony, it is for

---

[8] Of course, that same reasonable factfinder could also determine that Sabharwal did not
actually remember who struck through the paid-in-full language, or that he simply did not return the
checks to Shirian. Thus, a reasonable factfinder could believe that Shirian's testimony of sending
of the checks with the language visible was more credible. However, such determinations are for
a factfinder to make after trial.

the factfinder at trial to weigh the credibility of the witnesses and determine whom to believe. Further, despite the allegedly contradictory testimony, Sabharwal's version of events is supported by his testimony that he returned the three seemingly valid cashier's checks because they contained the paid-in-full language. Such apparent consistency in Sabharwal's alleged actions would provide further support for a reasonable factfinder to find in his favor. Taking all reasonable inferences in Pavit Complex's favor, this Court cannot find, as a matter of law, that Plaintiffs tendered the checks in full satisfaction of the claim and, therefore, the motion is due to be DENIED.

## B. Tendering in Good Faith

Even assuming Plaintiffs tendered the checks as full satisfaction of the claim, there is a genuine dispute of material fact as to whether that act was done in good faith. Under Alabama law, the good faith inquiry focuses on the offer of the accord, not on the parties' actions with respect to the underlying contract. *Meztista*, 845 So. 2d at 799 ("The focus of the good faith inquiry is on the offer of the accord, and not on the actions of the parties in performing the underlying contract."). Alabama's Title 7 Commercial Code—of which § 7-3-311 is a part—states that "'[g]ood faith' means honesty in fact in the conduct or transaction occurred." Ala. Code § 7-1-201(20). The Alabama Supreme Court has clarified that, with respect to accord and satisfaction under § 7-3-311, "'[g]ood faith is demonstrated when the party tendering the instrument offers a check with the intent to honestly enter into an accord and satisfaction while observing reasonable commercial

25

standards of fair dealing.'" *Meztista*, 845 So. 2d at 799 (quoting *Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 73 (Minn. 2000) and holding this reasoning "sound" and "consistent with § 7-3-311 and our precedent"). Again, there is a genuine dispute of material fact as to whether the alleged offer of accord was made in good faith.

Plaintiffs claim that their alleged offer of accord meets the *Meztista* standard "in that the checks were offered with an honest intent to enter into an accord and satisfaction while observing the reasonable commercial standards of fair dealing." (Doc. # 41, at 5). In support of this contention, Plaintiffs have offered several pieces of evidence. First, Plaintiffs rely on the March 15, 2010 email exchange between Shirian and Sabharwal in which Shirian requested return of the three $6,900 interest checks as well as release of the recorded mortgage and satisfaction of the Promissory Note. (Doc. # 34, at 5) (citing Ex. 34-8). Second, Plaintiffs claim that they made the offer in good faith because the 1171, 1172, and 1173 checks were sent with an accompanying cover letter stating that, upon deposit of all three checks, the Promissory Note is paid in full. *Id.* (citing Ex. 34-9). The alleged cover letter also requests return of the cashier's checks, the Promissory Note, and the recorded deed. (Ex. 34-9). Finally, they claim to have received a fax from Sabharwal acknowledging that the Promissory Note would be sent upon cashing of the three original checks numbered 1189, 1190, 1191, further emphasizing that they acted honestly while observing reasonable commercial standards. (Doc. # 34, at 5) (citing Ex. 34-10).

However, in addition to the previously cited evidence relating to who blacked out the paid-in-full language on the checks, Pavit Complex has cast serious doubt upon whether the alleged offer of accord was made in good faith.  With respect to the email exchange, Pavit Complex points out that the email is lengthy, containing eleven paragraphs with business, personal, and religious discussions.  (Doc. # 39, at 11) (citing Ex. 39-12 (containing the email exchange)).  Indeed, a quick glance at the email reveals that the request for the return of the three $6,900 interest checks occurs in the third paragraph, with an explanation that Plaintiffs would be sending three cashier's checks to replace the 1189, 1190, and 1191 checks.  (Ex. 34-8; Ex. 39-12).  This large paragraph relating to business makes no mention that the debt is to be paid in full and no request for return of the Promissory Note.  It is not until the tenth paragraph that one brief sentence relating to satisfaction of the debt and return of the Promissory Note is found.  (Ex. 34-8; Ex. 39-12) ("upon recieved,please release a recorded mortgage and satisfaction of the promissory note...") (errors found in the original).  Pavit Complex points out the sequence of paragraphs in between these two business-related paragraphs:

> The email continues with a long paragraph apparently quoting or referencing some unrelated writing followed by another long paragraph of discussing the Sabharwal family.  The next paragraph of the purported email quotes religious writings followed by a brief statement concerning the previous encounters of the parties and another long paragraph quoting religious writings.

(Doc. # 39, at 11).[9]  Based on this evidence, a reasonable factfinder could infer that

---

[9]  The entirety of the paragraphs between paragraph three—the reference to returning the interest checks—and paragraph ten—seeking return of the Promissory Note and satisfaction of the

Plaintiffs deliberately buried their request for release from the Promissory Note because

of the length of the email, the variety of topics discussed, the confusing sentence structure

and grammar, and the fact that the language relating to satisfaction of the underlying debt

---

debt—are as follows:

> THE 2 TEACHERS FATHER ABRAHAM AND GURU NANAK THOUGHT US ABOUT THE FACTS,,
> ONE OF THE MOST WONDERS ABOUT THE BOOK IS ABOUT GURU GOBIND SINGH,,THE TENTH AND LAST SIKH PROPHET,GAVE UP EVERYTHING IN HIS FIGHT AGAINST OPPRESSION,HE SCARIFIED HIS FOUR SONS,HIS PARENTS AND GAVE HIS OWN LIFE WHILE PREACHING THE MESSAGE OF LOVE.
>
> during the last 19 months each one of us received a warm welcome from you ,,THE SABHARWAL FAMILY,in your home ,even though the meetings could be appointed any where else in your city,,it is been with a great honor ,to meet with you and learn..
>
> I WORSHIP THE ONE WHO IS WORTHY OF BEING WORSHIPED.I TRUST THE ONE WHO IS WORTHY OF BEING TRUSTED.LIKE WATER MERGIN IN WATER, I MERGE IN THE LORD.SAYS JAI DAYV;I MEDITATE AND CONTEMPLATE THE LUMINOUS, TRUIMPHANT LORD.I AM LOVINGLY ABSORBED IN THE NIRVAANAA OF G-D"[SGGS 1106]
>
> if during the conversations,meeting or contacts, we came cross you in any appropriate way;;;
>
> WITHOUT PATIENCE AND FORGIVENESS,,COUNTLESS HUNDREDS OF THOUSANDS HAVE PERISHED.THEIR NUMBERS CANNOT BE COUNTED;NONE COULD COUNT THEM.BY THE BLESSING OF THE LORD'S WORD,ENTER THE MANSION OF THE LORD'S PRESENCE;ONE SHALL BE BLESSED WITH PATIENCE,FORGIVENESS,TRUTH AND PEACE.AND ONE SHALL BE UNFETTERED.PARTAKE OF THE TRUE WEALTH OF MEDITATION,AND THE LORD HIMSELF SHALL ABIDE WITHIN ONES BODY.THROUGH EGOTISM,ONE IS DISTRACTED AND RUINED;OTHER THAN THE LORD,ALL THINGS ARE CORRUPT.FORMING HIS CREATURES,HE PLACED HIMSELF WITHIN THEM,THE CREATOR IS UNATTACHED AND INFINITE."
> SGGS 937]

(Ex. 34-8; Ex. 39-12) (errors found in the original).

does not appear until the second-to-last paragraph.  In other words, this evidence could support a finding by a reasonable jury that Plaintiffs did not act in good faith—*i.e.*, with honesty in fact in the conduct or transaction in that they did not honestly intend for a genuine accord and satisfaction to occur.

Furthermore, Pavit Complex has provided evidence to cast doubt on whether the cover letter was ever sent—Sabharwal's testimony that he never received such a cover letter— and on the validity of the supposed return fax—Sabharwal's and Sellick's testimony regarding the facts that Sellick always sends faxes, that she would never sign one as "Dr. Saab", and the discrepancies between the fax admittedly sent by Sellick and the alleged fax at issue.  (Doc. # 39, at 11–13).  In its reply, Plaintiffs seem to ask this Court to discount the cover letter and alleged fax and find that they are entitled to summary judgment without considering such evidence.  (Doc. # 41, at 1) ("Herein Plaintiffs discount, only for the sake of allowing reasonable inferences in favor of Defendant at summary judgment, the authenticity and transmission of the disputed cover letter and fax.").  However, this Court cannot simply ignore the controversies surrounding the cover letter and the alleged fax.  If a reasonable factfinder finds that the Plaintiffs lied with respect to these items, this would be circumstantial evidence that they did not act in good faith in making the underlying offer of accord and were attempting get around that by fabricating evidence later on.  Thus, this evidence also supports a finding by a

reasonable that Plaintiffs did not act in good faith in making their offer of accord.[10]

Taking all reasonable inferences in Pavit Complex's favor, this Court cannot find as a matter of law that Plaintiffs acted in good faith, and, therefore, the motion is due to be DENIED.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment, (Doc. # 34), is DENIED.

DONE this 3rd day of February, 2011.

        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] Plaintiffs further attempt to distinguish themselves from the examples of bad faith in the offer of accord provided by the *Meztista* court.  (Doc. # 34, at 6).

> The examples of bad faith tenders cited in the Meztista decision are: 1) an insurer's offer of a very small settlement on a personal injury claim where liability is clear and the victim is in desperate need of the money, and 2) the routine practice of issuing checks bearing full satisfaction language, regardless of whether there is any dispute over the amount owed.  Neither of these situations resemble the instant case.  Case 1 compares a sophisticated and financially secure debtor taking advantage of a lesser party by both measures.  Here, the parties are both capable businesses dealing at arm's length.  Case 2 illustrates abuse of the offer of accord, where the debtor undisputedly owes a sum certain to the creditor.  Here, there is no such pattern of abuse.

(Doc. # 34, at 6).  First, it should be clear from the Meztista opinion as well as Plaintiffs' own paraphrasing of it, that these are merely *examples* of bad faith found in the Official Comment to § 7-3-311.  Here, a reasonable factfinder could find that Plaintiffs deliberately obscured the language relating to full satisfaction of the debt in the March 15, 2010 email.  Such a deliberate attempt to trick another party into agreeing to an accord would certainly be an example of bad faith.  Furthermore, a reasonable factfinder could find that the alleged cover letter was never sent and that the alleged fax from Sabharwal was a forgery.  Such falsifying acts would be additional support for the finding that Plaintiffs had been acting in bad faith from the very beginning of any offer of accord.